<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

May 4, 2026

Susan Beisler
34 Osborne Court
Mahwah, NJ 07430
*Pro Se Plaintiff*

James H. Oliverio
Anselmi & Carvelli LLP
56 Headquarters Plaza
West Tower
Fifth Floor
Morristown, NJ 07960
*Counsel for Defendants Gomsy Media, LLC and Cinemaholic, Inc.*

Jeremy Chase
Davis Wright Tremaine LLP
1251 Avenue of the Americas
42nd Floor
New York, NY 10020
*Counsel for Defendant NYP Holdings, Inc.*

Tyler Maulsby
Frankfurt Kurnit Klein & Selz P.C.
28 Liberty Street
New York, NY 10005
*Counsel for Defendant Future PLC*

<u>**LETTER OPINION FILED WITH THE CLERK OF THE COURT**</u>

**Re:    *Beisler v. Gomsy Media, LLC, et al., Civ. No. 24-10105 (SDW) (LDW)***

Parties:

Before this Court are Defendants Gomsy Media, LLC ("Gomsy Media"), Cinemaholic, Inc. ("Cinemaholic"), NYP Holdings, Inc. ("NYP Holdings") and Future PLC's ("Future")

Motions to Dismiss[1] (D.E. 29-1, 30-4, 34-1) *pro se* Plaintiff Susan Beisler's Complaint (D.E. 1 ("Compl.")), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Jurisdiction is proper pursuant to 28 U.S.C. § 1332.  Venue is proper pursuant to 28 U.S.C. § 1391.  This opinion is issued without oral argument pursuant to Rule 78.  For the reasons set forth herein, Defendants' Motions are **GRANTED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This case involves the fictional film *Pain Hustlers*, which premiered in theaters and on Netflix in October 2023.  (Compl. ¶ 33.)  The film is inspired by the true story of Insys Therapeutics, Inc. ("Insys"), a pharmaceutical company that sold a highly addictive medication called Subsys, intended for cancer pain management.  (*Id.* ¶ 34, Pl.'s Ex. D at 14.)  Despite the drug's specific use, Insys aggressively marketed the drug, recruiting doctors to promote it through a "speaker program."  (Pl.'s Ex. D at 14.)  Plaintiff worked as a pharmaceutical representative for Insy from 2012 to 2017.  (Compl. ¶ 6.)  The film's directors stated that the characters are fictional and not representative of actual Insys employees.  (*Id.* ¶ 35.)  One director later reiterated that the film's plot is not closely aligned with Insys' story.  (*Id.* ¶ 38.)

Since the film's release, Defendants, as media companies, have published several articles linking Plaintiff to the film's fictional character, Jackie Drake ("Jackie"), a sales representative for the film's fictitious pharmaceutical company.  (*Id.* ¶¶ 41–55.)  Jackie is described as "wacky", "steely", "unscrupulous", "greedy", and facing issues like financial troubles and being fired.  (*Id.* ¶¶ 24, 60.)  On October 27, 2023, Gomsy Media and Cinemaholic published an article on "The Cinemaholic.com" suggesting that Jackie is "most likely" based on Plaintiff, identifying her as a New Jersey-based pharmaceutical representative for Insys, and speculating about an inappropriate relationship between her and John Kapoor ("Kapoor"), the CEO of Insys.  (*Id.* ¶ 43–44.)  The article referenced Plaintiff's email, where she wrote "many hugs and kisses" to Kapoor, to suggest a possible romantic relationship.  (*Id.* ¶ 44.)  Another Cinemaholic.com article on the same day reinforced these claims.  (*Id.* ¶¶ 45–47.)  On the same day, NYP Holdings published an article on TheDecider.com, implying that Jackie was based on Plaintiff and writing that her "overly friendly" emails with Kapoor served as crucial evidence in the pending lawsuits against him.  (*Id.* ¶¶ 49–50.)  On October 30, 2023, Future published on MarieClaire.com, also suggesting that Jackie was based on Plaintiff.[2]  (*Id.* ¶¶ 53–54.)

Almost a year after the articles were published, on October 17, 2024, Plaintiff discovered the articles when an employer suggested that the negative press might be hindering her job search.  (*Id.* ¶ 56.)  The defamatory articles appeared among the top twenty Google search results for Plaintiff's name.  (*Id.* ¶ 57.)  On October 25, 2024, Plaintiff filed a six-count complaint, asserting claims for libel, libel *per se*, libel *innuendo*, injurious falsehood, defamatory injury to reputation,

---

[1] As Defendant Gomsy Media is the parent company of Defendant Cinemaholic, they jointly moved to dismiss, while the other two Defendants filed individually.  (Compl. ¶ 16.)

[2]  Despite Plaintiff's claim that Defendants "never remove anything", this Court could not find the articles on the Internet at the time of this Opinion, indicating they may have been removed.  (Compl. ¶ 76.)

and false light[3]. (*See generally id.*) She seeks damages for reputational harm, lost wages, prospective damages, legal fees, and emotional distress. (*Id.* ¶¶ 74–87.) Defendants timely moved to dismiss the complaint. (*See* D.E. 29-1, 30-4, 34-1.) Although Plaintiff requested and received an extension to oppose Future's Motion, she has not filed any opposition or other documents since her extension request on September 19, 2025. (*See* D.E. 32.)

## II.    LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether allegations are plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, federal courts "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff," and determine "whether [the] plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichik*, 605 F.3d 223, 229 (3d Cir. 2010). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "[L]abels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555.

## III.    DISCUSSION

All Defendants seek to dismiss all claims against them, contending that Plaintiff's allegations fail as a matter of law because: (1) the statements in question are non-actionable opinion based on publicly disclosed facts; (2) Plaintiff fails to plead that the statements were made with actual malice; and (3) the statements are protected by New Jersey's fair-report privilege.[4] (*See generally* D.E. 29-1, 30-4, 34-1.) The Motions are unopposed.

A.    <u>Plaintiff's Libel and Related Claims Fail Because the Challenged Statements are Non-Actionable Opinions</u>

---

[3] Plaintiff's claims for libel, libel *per se*, libel *innuendo*, (Counts I–III) and defamatory injury to reputation (Count VI) are all duplicative of the underlying tort of libel. *Leers v. Green*, 131 A.2d 781, 787 (N.J. 1957). Thus, they will be treated as a group and referred to collectively as the "Libel Claims."

[4] Although Defendants filed three separate Motions to Dismiss, the reasons for dismissal are applicable to all Defendants equally. Therefore, this Court will consolidate the arguments from these Motions and consider them collectively, rather than assessing each Motion individually.

Under New Jersey law, defamation involves:  (1) making a false and defamatory statement about someone; (2) publishing that statement to a third party without privilege; and (3) the publisher being at least negligent.  *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1113 (N.J. 2009) (quoting *DeAngelis v. Hill*, 847 A.2d 1261, 1268 (N.J. 2004)).  Libel is defamation expressed through written or printed words.  *W.J.A. v. D.A.*, 43 A.3d 1148, 1153 (N.J. 2012).  "Pure opinions" based on disclosed facts cannot serve as a basis for defamation, regardless of whether they are derogatory or offensive.  *Kotlikoff v. The Cmty. News*, 444 A.2d 1086, 1091 (N.J. 1982).  This is because a reasonable reader can assess the disclosed factual basis and determine if the opinion is justified.  *Id.*  Courts evaluate whether a statement is objectively verifiable and whether it implies undisclosed facts.  *Ward v. Zelikovsky*, 643 A.2d 972, 979 (N.J. 1994).  They distinguish between verifiable facts and opinions, which reflect a person's state of mind.  *Id.*  However, this is not a "wholesale defamation exemption for anything that might be labeled 'opinion'".  *Id.* (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 2 (1990)).  An opinion can be defamatory if it implies false, undisclosed facts, preventing the reader from assessing the factual basis.  *Id.*  Courts also consider the content and context of the statement using the reasonable person standard to determine if it constitutes an opinion.  *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 231 (N.J. 1986).

Here, Defendants' statements are considered pure opinions because they are based on disclosed facts and reflect the writer's state of mind rather than asserting them as facts.  Collectively, the articles primarily state:  (1) Jackie is most likely inspired by or based on Plaintiff due to their similarities; (2) it is suspected that Plaintiff and Kapoor had an inappropriate workplace relationship based on their email exchanges.  (Compl. ¶¶ 41–51.)  Each statement relies on disclosed facts, such as Plaintiff's emails with Kapoor about Insys' speaker program, where she allegedly expressed concerns about its fairness and discussed bribes given to doctors in the program.  (Pl.'s Ex. A at 4; Pl.'s Ex. D at 14.)  In the film, the speaker program boosts the fictional company's profits.  (Pl.'s Ex. B at 7.)  This "paper trail of evidence" links Plaintiff to Kapoor and the Insys scandal, and Plaintiff does not deny sending these emails, only claiming the statements are "false and defamatory."  (Pl.'s Ex. A at 3; Compl. ¶ 41.)  Notably, the Marieclaire.com article outlines the Insys scandal and Kapoor's subsequent trial, heavily supported by Plaintiff's emails.  (Pl.'s Ex. D at 14–16.)  Since the factual basis connecting Jackie to Plaintiff is disclosed and undisputed, readers can assess the factual basis of all three articles and decide if Jackie is truly based on Plaintiff.  Thus, all statements are conclusions drawn from the disclosed facts and are considered pure opinions.

The context and language of the statements also indicate to the reader that they are opinions.  Regarding content, all three articles note that it is unconfirmed whether Jackie is based on Plaintiff or if Plaintiff and Kapoor had a romantic relationship, relying solely on their email exchanges.  (Compl. ¶¶ 43–44, 47–48, 50.)  The articles use speculative language such as "most likely based on" or "appears to be based on", with the Cinemaholic.com article expressly stating that while Jackie is inspired by a real person, she "receives a complete rewrite of the background and other character details."  (*Id.* ¶¶ 43, 50.)  In terms of context, the articles are written in an opinion style, clearly indicating that the conclusions drawn from the public facts of the Insys scandal and the film are the writer's beliefs, not confirmed facts.  Importantly, Plaintiff has not argued that the

underlying facts are false, and true statements are absolutely protected under the First Amendment. *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011). In fact, she admits to being a pharmaceutical representative at Insys and does not dispute the truth of her alleged emails with Kapoor or whether she had an inappropriate relationship with him. (Compl. ¶ 6.) Therefore, the Libel Claims fail as the challenged statements are nonactionable opinions.

B. Plaintiff Has Failed to Plead Actual Malice

Speech on matters of public concern "occupies the highest rung of the hierarchy of First Amendment values." *Rocci v. Ecole Secondaire Macdonald-Cartier*, 755 A.2d 583, 587 (N.J. 2000) (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985)). Greater protections are given to speech involving public interest because of the important role that lively debate plays in our democracy. *Senna v. Florimont*, 958 A.2d 427, 430 (N.J. 2008). Therefore, a plaintiff in a speech-based tort involving matters of public concern must establish actual malice, requiring clear and convincing evidence that the defendant "knew the statements to be false or acted in reckless disregard of their truth or falsity." *Lee v. TMZ Prods. Inc*, 710 F. App'x 551, 560 (3d Cir. 2017) (quoting *Dairy Stores, Inc.*, 516 A.2d at 233.)) When assessing actual malice, courts consider whether the defendant had serious doubt about the truth of the statement or a subjective awareness of its probable falsity. *McDowell v. Paiewonsky*, 769 F.2d 942, 951 (3d Cir. 1985) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 334 n.6 (1974)). Under New Jersey law, stories about public health are considered matters of public interest. *Senna*, 958 A.2d at 443.

Here, the actual malice standard applies because the articles and the film address the American opioid epidemic, a well-known public health crisis. Plaintiff has failed to establish actual malice in any article, as there are no allegations suggesting that any Defendant doubted the truth of their statements, or knew of their probable falsity. Instead, the Complaint contains several conclusory claims, such as Defendants being "greed-driven", publishing statements "maliciously" or with "ill will", and that Defendants "should have known" the statements were false. (Compl. ¶¶ 28, 31, 66, 115–17.) However, the actual malice standard cannot be met by conclusory allegations or by showing "ill will or 'malice' in the ordinary sense of the term". *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989); *Neuwirth v. State*, 300 A.3d 274, 284 (N.J. App. Div. 2023). Thus, Plaintiff has failed to establish actual malice and her Libel Claims (Counts I–III) and false light claim (Count V) fail. [5]

C. Plaintiff's Injurious Falsehood Claim Also Fails

Injurious falsehood is defined as "any false statement that causes pecuniary loss."[6] The elements are: "(1) publication; (2) with malice; (3) of false allegations concerning its property,

---

[5] A false light claim requires the actual malice standard regardless of whether it concerns an issue of public interest. *See Tellado v. Time-Life Books, Inc.*, 643 F. Supp. 904, 907 (D.N.J. 1986).
[6] Courts often refer to injurious falsehood as trade libel or product disparagement. *See Mayflower Transit, LLC*, 314 F. Supp. 2d at 378.

product or business, and (3) special damages." *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004). To establish malice in the injurious falsehood context, a plaintiff must demonstrate that the defendant's statements were false or that they were written with reckless disregard for the truth or falsity. *Id.* (citing *Juliano v. ITT Corp.*, No. 90-1575, 1991 WL 10023, at *5 (D.N.J. Jan. 22, 1991)). Here, Plaintiff's injurious falsehood claim (Count VI) fails because it relies on the same factual allegations as her Libel Claims and lacks any facts demonstrating malice. (Compl. ¶ 111.)

## V. **CONCLUSION**

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED WITH PREJUDICE**. An appropriate order follows.

/s/ Susan D. Wigenton

**SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
        Leda D. Wettre, U.S.M.J.